Gen. 199]																	199

**FINANCIAL INSTITUTIONS – BANKS – MARYLAND LAW MAY NOT PROHIBIT EITHER RELOCATION OF NEW JERSEY BANK'S MAIN OFFICE TO MARYLAND FOR THE PURPOSE OF MERGER WITH A MARYLAND BANK OR SUBSEQUENT HOLDING COMPANY MERGER**

November 23, 1994

*The Honorable Margie H. Muller*
*Bank Commissioner*

On September 1, 1994, we issued an opinion to you regarding the interaction between federal law and Maryland's banking laws as applied to the proposed acquisition of the Bank of Baltimore (the "Bank"), a Maryland bank. First Fidelity Bancorporation, a bank holding company located in Lawrenceville, New Jersey ("First Fidelity"), proposes to acquire the Bank, which is the banking subsidiary of Baltimore Bancorp, Inc.

That opinion, designated as 79 *Opinions of the Attorney General* 186 (1994), addressed the transaction as it was originally proposed to you by First Fidelity. Under that proposal, the Bank was to merge into a newly-formed federal savings bank to avoid the application of certain Maryland statutes that otherwise would have prohibited the transaction.[1] The opinion concluded that any application of Maryland law to prohibit the proposed transaction would violate the Commerce Clause of the United States Constitution.

First Fidelity has now determined to restructure the proposed acquisition. Instead of having the Bank merge into a newly-formed federal savings bank, thus avoiding the impact of Maryland's interstate banking laws, First Fidelity now proposes an entirely different structure for the transaction.

---

[1] The Maryland statutes in question are §§5-903, 5-1002, and 12-207 of the Financial Institutions ("FI") Article, Maryland Code. *See* note 3 below. These provisions, made applicable to interstate acquisitions by bank holding companies by 12 U.S.C. §1842(d) (the Douglas Amendment), are discussed in detail in the earlier opinion.

For the reasons stated below, we conclude that the proposed changes in the transaction have no effect on our prior opinion. The transaction may not constitutionally be prohibited by Maryland law.

# I

## Background

Section 30 of the National Bank Act, 12 U.S.C. §30, provides in part that "[a]ny national banking association ... may change the location of its main office ... upon ... approval from the Comptroller of the Currency to any ... location ..., but not more than 30 miles [from its existing location]." First Fidelity has been granted permission by the Office of the Comptroller of the Currency ("OCC") to relocate the "main office" of its subsidiary First Fidelity Bank ("FFB") from Salem, New Jersey, to Elkton, Maryland.

The Bank will then be merged into FFB, with FFB as the survivor. We shall refer to this transaction as the "bank merger." The outstanding shares of stock of the Bank held by Baltimore Bancorp will be converted into the right to receive 1,107,781 shares of FFB common stock and 160,540 shares of FFB preferred stock. The common stock, when issued to Baltimore Bancorp, will represent no more than 4.9% of the outstanding common stock of FFB. The preferred stock will not constitute voting securities for purposes of the Bank Holding Company Act.

Following the bank merger, a wholly-owned subsidiary of First Fidelity will be merged into Baltimore Bancorp, with Baltimore Bancorp emerging as the survivor. We shall refer to this transaction as the "holding company merger." First Fidelity will then acquire all of the outstanding stock of Baltimore Bancorp for cash and will become once again the sole indirect owner of the outstanding stock of FFB.

The restructured transaction raises two issues under Maryland's banking laws that were not addressed in our prior opinion. The first is whether the relocation of FFB from New Jersey to Maryland is permitted under Maryland law, given that the result will be a bank located in Maryland being owned by a New Jersey bank holding company. The second issue is whether the subsequent bank and holding company mergers are permitted.

## II

## The Relocation

Maryland's banking laws do not expressly prohibit the relocation of an out-of-state bank's main office to Maryland. Nor could Maryland prohibit such a relocation if federal regulators approved it.

The power of the OCC to approve the relocation of the main office of a national bank, even in the face of state objections, has been upheld in every case in which the issue has been squarely presented. Early cases validating intrastate relocations include *Traverse City State Bank v. Empire Nat'l Bank*, 228 F. Supp 984 (W.D. Mich. 1964) and *Ramapo Bank v. Camp*, 425 F.2d 333 (3rd Cir. 1970), *cert. denied*, 400 U.S. 828 (1970). Interstate relocations were also analyzed and approved in two recent cases: *Synovus Financial Corp. v. Board of Governors*, 952 F.2d 426 (D.C. Cir. 1991) and *Idaho v. Clarke*, 994 F.2d 1441 (9th Cir. 1993). Additionally, the OCC has recently approved interstate relocations in which the relocating national banks were permitted to retain their branch networks in their former states.[2]

As the court stated in *Synovus*, "Section 30 [of the National Bank Act] explicitly places authority over relocations with the OCC and has been generally construed to preempt state laws." 952 F.2d at 435. Preemption occurs, as the courts in *Synovus* and *Clarke* found, because the Douglas Amendment, which permits states to restrict interstate bank acquisitions, does not apply to the relocation of a national bank under Section 30. A relocation is not the same as an "acquisition" under the Bank Holding Company Act and therefore does not trigger the Douglas Amendment or an application to the Federal Reserve Board.

---

[2] *See* Decision of the Office of the Comptroller of the Currency on the Applications of American Security Bank, N.A., Washington, D.C., and Maryland National Bank, Baltimore, Maryland (February 4, 1994); Decision of the Office of the Comptroller of the Currency on the Applications of First Fidelity Bank, N.A., Pennsylvania, Philadelphia, Pennsylvania and First Fidelity Bank, N.A., New Jersey, Newark, New Jersey (January 10, 1994).

To be sure, a relocation as part of a transaction to acquire a Maryland bank undoubtedly would be prohibited by FI §§5-903, 5-1002, and 12-207.[3] But, precisely because the Douglas Amendment does not apply, these State law barriers would be subject to rigorous scrutiny under the Commerce Clause.

Attorney General Sachs faced analogous situations in 68 *Opinions of the Attorney General* 75 (1983) and 69 *Opinions of the Attorney General* 37 (1984). In each case, an acquisition permitted by federal law would have been prohibited by Maryland's banking laws. The crucial question was whether or not the Douglas Amendment applied to the transaction; if it did, it would give protection under the Commerce Clause to the application of otherwise discriminatory state laws. In both instances, however, the Attorney General found that the Douglas Amendment did not apply and that the State laws in question could not survive constitutional scrutiny under the Commerce Clause.

We know from *Synovus* and *Idaho* that relocation of a national bank under Section 30 is not an "acquisition" under the Bank Holding Company Act, a proposition with which the Federal Reserve Board generally agrees.[4] Because it is not an acquisition,

---

[3] Under FI §5-903(a), except as provided in the Douglas Amendment or in certain specific circumstances under Maryland law, "an out-of-state bank holding company or its subsidiary may not acquire or hold, directly or indirectly, any voting shares of, any interest in, or all or substantially all of the assets of any bank located in this State." FI §5-1002 states that Subtitle 10, authorizing interstate banking acquisitions on a regional basis only, "sets forth the conditions under which an out-of-state bank holding company may acquire a Maryland bank ...." FI §12-207 prohibits banking activities by a foreign banking corporation. A more detailed discussion of these provisions may be found in 79 *Opinions of the Attorney General* at 190-92.

[4] As a result of the decision in *Synovus* and prior to *Clarke*, the Federal Reserve Board rescinded a regulation, formerly published at 12 C.F.R. §225.144, that required bank holding companies to obtain Federal Reserve Board approval for interstate relocations and specifically mandated "compliance with the state authorization provisions of the Douglas Amendment." The statement that accompanied the rescission reserved Federal Reserve Board authority to require an application (and compliance with the Douglas Amendment) in connection with an

(continued...)

the Douglas Amendment does not apply to the proposed relocation. As we determined in our prior opinion about First Fidelity, the application of the restrictive provisions of FI Subtitles 9, 10, and 12 would present an absolute barrier to First Fidelity's ownership of a bank in Maryland and would thus violate the Commerce Clause. *See* 79 *Opinions of the Attorney General* 196-98 (1994).

## III

### The Mergers

As discussed in Part II above, Maryland law may not constitutionally be applied to prevent the relocation of FFB, a national bank, into Maryland. Once FFB has opened its doors in Elkton, Maryland, it becomes a domestic bank for purposes of Maryland banking laws.[5] As such, it may enter into any type of transaction permitted to state or national banks located in Maryland.

Any "bank" in Maryland, defined under FI §3-701(b) to include both state commercial banks and national banks, may merge into, consolidate with, or transfer assets to "one or more other banks." Under FI §3-702(c), if the successor to a merger will be a national bank, federal law governs the actions of the parties and the rights of their shareholders. The proposed bank merger between the relocated FFB and the Bank of Baltimore is therefore expressly permitted under Maryland's banking laws.

As we have noted in Part I above, Baltimore Bancorp will receive, as a result of the bank merger, no more than 4.9% of the common stock of FFB in exchange for its stock in the Bank. It is unclear whether Baltimore Bancorp would, as a result, cease to be treated as a bank holding company under the Bank Holding

---

[4] (...continued) interstate relocation only "in situations in which the Board has found an evasion of the [Bank Holding Company Act]." 57 Fed. Reg. 9973 (1992). The Federal Reserve Board has found no evasion in this case.

[5] A similar issue arose in the 1983 opinion, when Allied Irish Banks Limited designated Maryland as its "home state" under the International Banking Act, 12 U.S.C. §3100 *et seq.* By doing so, Allied Irish avoided definition as an "out-of-state bank holding company."

Company Act or under Maryland law.[6]  If Baltimore Bancorp is no longer a bank holding company after the bank merger, the subsequent merger of Baltimore Bancorp with a subsidiary of First Fidelity would not be an "acquisition" of a bank or bank holding company outside the region specified in the intrastate bank acquisition law.[7]

If Baltimore Bancorp remains a bank holding company after the bank merger, FI §5-1002 would apply to the subsequent merger transaction, but without the protection of the Douglas Amendment. The Douglas Amendment applies only to the acquisition by a holding company of an "additional bank" outside the home state of the holding company.  12 U.S.C. §1842(d).[8]  The only bank that First Fidelity will own in Maryland, both before and after the bank merger, will be FFB.  The later acquisition of the shares of Baltimore Bancorp will not result in the acquisition of an "additional bank."  As we concluded in our earlier opinion, the discriminatory provisions of Maryland law cannot constitutionally be applied under these circumstances to prohibit an interstate banking transaction to which the Douglas Amendment does not apply.

---

[6] Under the Bank Holding Company Act, a bank holding company is "any company which has control over any bank or over any company that is or becomes a bank holding company ...."  12 U.S.C. §1841(a). However, "there is a presumption that any company which directly or indirectly owns, controls, or has power to vote less than 5 per centum of any class of voting securities of a given bank or company does not have control over the bank or company."  FI §5-1001(e) provides that "'[b]ank holding company' means any company that is a bank holding company under the Federal Bank Holding Company of 1956, as amended ...."

[7] This conclusion would also prevent application of the divestment provisions of FI §5-1004(b) and the enforcement penalties set forth in FI §5-1004(c).  The Commerce Clause does not allow a state law to immediately undo a transaction that was protected in the first instance from state law proscription.

[8] It is our understanding that the Federal Reserve Board will take the same position on this issue.

## IV

## Conclusion

In summary, it is our opinion that the Commerce Clause does not allow Maryland law to impede the relocation of First Fidelity Bank from Salem, New Jersey, to Elkton, Maryland. Further, Maryland law does not prohibit the subsequent merger of the Bank of Baltimore into First Fidelity Bank or the merger of a subsidiary of First Fidelity Bancorporation into Baltimore Bancorp.

J. Joseph Curran, Jr.
*Attorney General*

J. Steven Lovejoy
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions & Advice*